**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**In Admiralty**

**Case No.:**

ACCELERANT SPECIALTY INSURANCE COMPANY, HADRON SPECIALTY INSURANCE COMPANY, SPINNAKER SPECIALTY INSURANCE COMPANY, TEXAS INSURANCE COMPANY, PALOMAR EXCESS AND SURPLUS INSURANCE COMPANY, and CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO UMR NO. B0507GO2500002,

Plaintiffs,

v.

QUINT YACHTS LLC and US BANK NA,
Defendants. /

# COMPLAINT

Plaintiffs, ACCELERANT SPECIALTY INSURANCE COMPANY ("Accelerant"), HADRON SPECIALTY INSURANCE COMPANY ("Hadron"), SPINNAKER SPECIALTY INSURANCE COMPANY ("Spinnaker"), TEXAS INSURANCE COMPANY ("TIC"), PALOMAR EXCESS AND SURPLUS INSURANCE COMPANY ("Palomar"), AND CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO UMR NO. B0507GO2500002 ("Underwriters") (Plaintiffs, collectively "Insurers"), hereby sue the Defendants, QUINT YACHTS LLC ("Quint") and US BANK NA ("Bank")(Quint and Bank collectively "Defendants") and state as follows:

## JURISDICTION AND VENUE

1. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201.

2. Plaintiffs designate this as an admiralty and maritime cause within the meaning of Fed. R. Civ. P. 9(h). This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1333, as it involves a dispute regarding a marine insurance contract. Plaintiffs invoke the provisions of Rule 9(h), 38(e), and 82 of the Federal Rules of Civil Procedure.

3. Venue is proper within the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because it has been stipulated as an appropriate venue; the Policy at issue states that disputes shall be heard where the insured or where the insured's agent resides. Quint's address on the Policy is listed as being in Pinellas County, Florida, rendering the Middle District of Florida a contractually agreed-upon venue.

4. For the reasons set forth herein there is no coverage for this loss; however, procedurally, all conditions precedent to the filing of this action have occurred, been waived, or have otherwise been complied with.

5. Pursuant to the requirements of 28 U.S.C. § 2201 and Article III, Section 2 of the United States Constitution, a case or controversy exists and has existed between the Parties since the beginning of this action, such that an action for declaratory judgment is ripe and appropriate.

## PARTIES

6. At all times material to this action, Accelerant is and was a domestic surplus lines insurer organized and existing under the laws of the State of Arkansas, with its office and principal place of business located in the State of Georgia.

7. At all times material to this action, Hadron is and was a domestic surplus lines insurer organized and existing under the laws of the State of Arkansas, with its office and principal place of business located in the State of Georgia.

8. At all times material to this action, Spinnaker is and was a domestic surplus lines insurer organized and existing under the laws of the State of Texas, with its office and principal place of business located in the State of New Jersey.

9. At all times material to this action, TIC is and was a licensed and admitted surplus lines insurer organized and existing under the laws of the State of Texas, with its office and principal place of business located in the State of Nebraska.

10. At all times material to this action, Palomar is and was a domestic surplus lines insurer organized and existing under the laws of the State of Arizona, with its office and principal place of business located in the State of California.

11. The Certain Underwriters at Lloyd's of London Subscribing to UMR No. B0507GO2500002 are made up of three subscribing syndicates: AEGIS Syndicate 1225 AES, Talbot Syndicate 1183 TAL, and Liberty Mutual Insurance Europe SE (Institute of London Underwriters). Each of these syndicates are organized and exist under the laws of the United Kingdom, with offices and principal places of business located in the United Kingdom.

12. At all times material to this action, Quint is and was a limited liability company organized and existing under the laws of the State of Florida.

13. At all times material to this action, US Bank NA is and was a business corporation existing under the laws of the State of Minnesota, with offices and principal places of business located in the State of Ohio. It is subject to personal jurisdiction in Florida by virtue of the forum-selection clause in the Policy on which it is listed as a Loss Payee.

## FACTUAL ALLEGATIONS

14. This matter arises out of an incident which occurred on or about July 20, 2026, when Quint's vessel, a 2011 40' Azimut with Cummins twin 350HP diesel engines, M/V For Da

Buoys, HIN: XAX40114L112, (the "Vessel") began taking on water in its slip at Maximo Marina located at 4801 37th Street South, St. Petersburg, Florida 33711 (the "Incident").

15. Quint sought coverage under the marine insurance policy issued by Insurers, policy no. CSRYP/2506527, with effective dates of November 16, 2025, to November 16, 2026 (the "Policy"). A complete copy of the Policy is attached hereto as **Exhibit "A"**.

16. The Policy lists Bank as a Loss Payee, *See* **Exhibit A**, p. 3.

17. The Policy provides, *inter alia*, $323,000 in hull coverage, subject to a $16,150 deductible. *See* Ex. A.

18. The Policy provided, in relevant part, as follows:

> **3. Coverage A, Hull, Machinery, Equipment and Dinghy**
>
> If a sum insured is shown for Section A of the Insuring Agreement Declaration Page, We provide coverage for accidental physical loss of or damage to the Scheduled Vessel which occurs during the period of this Insuring Agreement and within the limits set out in the Insuring Agreement Declaration Page, subject to the Insuring Agreement provisions, conditions, warranties, Deductibles and exclusions.
>
> * * *
>
> **Exclusions to Coverage A**
>
> Unless specifically agreed by Us in writing and additional premium charged the following losses and/or damages (whether incurred directly or indirectly) are not covered by this Insuring Agreement:
>
> ii. Losses due to wear and tear, gradual deterioration, lack of maintenance, inherent vice, weathering, insects, mould, animal and marine life.
>
> xviii. Damage to the Scheduled Vessel's engines, mechanical and electrical parts, unless caused by an accidental external event such as collision, impact with a fixed or floating object, grounding, stranding, ingestion of foreign object, lightning strike or fire.
>
> * * * * *

*See* Ex. A.

19. Quint has sought coverage from Plaintiffs in connection with the Incident, which Plaintiffs promptly investigated.

20. The post-loss investigation revealed that the source of water ingress was the AC pump head.

21. The post-loss investigation further revealed that the cause of loss was due to a failed seal on the AC pump head of the Vessel.

22. The post-loss investigation revealed that the AC pump head had substantial signs of corrosion and wear and tear indicative of the verdigris present on the AC pump head.

23. According to the post-loss investigation there has been no other identifiable cause of loss.

24. Insurers now seek a declaration from this Court that there is no coverage for either Defendant under the Policy.

## COUNT I: LACK OF FORTUITY

25. Plaintiffs readopt and reallege the allegations containing in paragraphs 1 through 24 as if more fully set forth at length herein.

26. The insuring agreement for hull loss contained within the Policy provides, inter alia, that:

> If a sum insured is shown for Section A of the Insuring Agreement Declaration Page, **We provide coverage for accidental physical loss of or damage to the Scheduled Vessel** which occurs during the period of this Insuring Agreement and within the limits set out in the Insuring Agreement Declaration Page, subject to the Insuring Agreement provisions, conditions, warranties, Deductibles and exclusions.

*See* **Exhibit A**, p. 6 (emphasis added).

27. The loss and/or damage to the Vessel does not constitute "accidental physical loss or damage" for which coverage is afforded under the express terms of the Policy.

28. The Incident was not the result of an accident or fortuitous event, but rather of Quint's failure to adequately maintain or replace the AC pump head, inclusive of the AC pump head seal—which is not a fortuitous event.

29. Thus, the Incident was not fortuitous and was the result of inevitable actions which caused the Vessel to take on water and sink.

30. As such, there is no insurance coverage for Quint's claim because the loss was not fortuitous.

**WHEREFORE**, Insurers respectfully request this Honorable Court to adjudge and declare that there is no coverage for the Incident for the Defendants because the loss was not fortuitous and further request such other relief as the Court may deem just and appropriate under the circumstances.

**COUNT II: EXCLUSION FOR WEAR AND TEAR AND CORROSION**

31. Plaintiffs readopt and reallege the allegations containing in paragraphs 1 through 24 as if more fully set forth at length herein.

32. The Policy specifically excludes hull coverage for "[l]osses due to wear and tear, gradual deterioration, lack of maintenance, inherent vice, weathering, insects, mould, animal and marine life." *See* **Exhibit A**, p. 7.

33. The corrosion to the AC pump head's metallic components was the result of wear and tear, gradual deterioration or lack of maintenance—each a specifically excluded cause of loss under the Policy.

34. The deterioration of the AC pump head's seal was the result of wear and tear, gradual deterioration or lack of maintenance—each a specifically excluded cause of loss under the Policy.

35. As a result, Quint's claim is excluded from coverage under Exclusion ii. to Coverage A of the Policy.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court to adjudge and declare that Exclusion ii. to Coverage A of the Policy applies to the claims asserted by Quint such that there is no coverage for the Incident for the Defendants and further request such other relief as the Court may deem just and appropriate under the circumstances.

## COUNT III– EXCLUSION FOR LACK OF ACCIDENTAL EXTERNAL EVENT

36. Plaintiffs readopt and reallege the allegations containing in paragraphs 1 through 24 as if more fully set forth at length herein.

37. Exclusion xviii. of the Policy excludes from coverage "Damage to the Scheduled Vessel's engines, mechanical and electrical parts, unless caused by an accidental external event such as collision, impact with a fixed or floating object, grounding, stranding, ingestion of foreign object, lightning strike or fire." *See* **Exhibit A**, p. 8.

38. There was no "accidental external event" within the meaning of the Policy that caused the Vessel's loss.

39. The loss was not caused by collision.

40. The loss was not caused by impact with a fixed or floating object.

41. The loss was not caused by grounding.

42. The loss was not caused by stranding.

43. The loss was not caused by ingestion of a foreign object.

44. The loss was not caused by a lighting strike.

45. The loss was not caused by fire.

46. Rather, the Vessel partially sank because the AC pump head failed due to corrosion and a failure to maintain or replace the AC pump head and AC pump head seal.

47. Consequently, any resulting damage to "engines, mechanical and electrical parts"—which are a significant part of the damage to the Vessel—are not covered.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to adjudge and declare that Exclusion xviii. to Coverage A of the Policy applies to the claims asserted by Quint such that there is no coverage for damage to engines, mechanical, and electrical parts of the Vessel as a result of the Incident and further request such other relief as the Court may deem just and appropriate under the circumstances.

Plaintiffs hereby request and demand all interest, costs and attorney's fees permitted by any applicable contract, law or statute

Dated: October 13, 2026.

Respectfully submitted,

**DAVANT LAW, P.A.**
*Attorneys for Plaintiffs*
100 NE Third Ave, Suite 440
Fort Lauderdale, FL 33301
Telephone: (954) 414-0400

By: */s/ Charles S. Davant*
Charles S. Davant
Florida Bar No. 15178
csd@davantlaw.com
Christopher M. Fernandez
Florida Bar No. 1030892
cfernandez@davantlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this October 13, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which served a copy thereof on all counsel of record.

*/s/ Charles S. Davant*
Charles S. Davant